STATE of Missouri, Respondent,

v.

Derek L. JACKSON, Appellant.

No. WD 53660.

Missouri Court of Appeals,
Western District.

May 26, 1998.

Andrew A. Schroeder, Asst. Appellate Defender, Kansas City, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Daniel G. Cierpiot, Asst. Atty. Gen., Jefferson City, for Respondent.

Before HANNA, P.J., and LAURA DENVIR STITH and EDWIN H. SMITH, JJ.

EDWIN H. SMITH, Judge.

Derek L. Jackson appeals from the judgment of the Circuit Court of Jackson County denying, *inter alia,* his motion for a new trial. In his sole point on appeal, he claims that the trial court erred in not granting him a new trial because one was warranted based on the trial court's failure to sustain his *Batson*[1] objection to the State's use of a peremptory strike to strike venireperson Patricia Brown–Dixon, an African–American, in that the strike was racially motivated and the State's reason given for the strike was pretextual.

We affirm.

## Facts

The sufficiency of the evidence to convict the appellant is not in dispute. As such, our recitation of the facts is limited to the procedural history.

On November 28, 1995, the appellant, an African–American, was charged in the Circuit Court of Jackson County with one count of trafficking in the second degree, § 195.223, RSMo 1994. The cause proceeded to jury trial on June 24, 1996. On the second day, during jury deliberations, the trial court determined that the jury was hopelessly deadlocked and a mistrial was declared.

A second trial was commenced on September 23, 1996, with the Honorable Preston Dean presiding. During *voir dire,* venireperson Patricia Brown–Dixon, an African–American, approached the trial court and the attorneys, out of the presence of the rest of the venirepanel, with an "observation" she had made. She informed the trial court that one of the white members of the venirepanel had said "guilty" to another venireperson, immediately after the appellant walked into the courtroom and that a third venireperson laughed. Ms. Brown–Dixon identified for the court which venireperson made the statement, as well as the venireperson to whom the comment was made. She further identified Donna Hepting as the venireperson who laughed. Ms. Brown–Dixon stated that she thought the comment was racially motivated by the way the venireperson was so quick to judge the appellant based solely on his appearance.

When questioned by the appellant's attorney, Ms. Brown–Dixon stated that the remark would not affect her judgment in the case, even if the venirepersons involved ultimately served on the jury with her, and that she would base her determination of guilt or

---

1. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

innocence solely on the evidence. After questioning her, the State's attorney stated that she was "a fine candidate to serve on this jury."

Both the venireperson who made the remark concerning the appellant and the venireperson to whom he commented were stricken for cause by stipulation of the parties. Ms. Hepting was subsequently stricken for cause on the motion of the appellant over the objection of the State.

The State used a peremptory strike to strike Ms. Brown–Dixon, to which the appellant's counsel made a *Batson* objection. Noting that Ms. Brown–Dixon, like the appellant, was an African–American, the appellant's counsel requested that the State provide a legitimate, race-neutral reason for striking her. The State stated that it used a peremptory strike to strike Ms. Brown–Dixon because of its concern that she would, in her deliberations, overcompensate in favor of the appellant because she perceived the comment by the venireperson, that the appellant was "guilty," as a racial one, although there was no objective basis for concluding such. Further, the State noted that not only did she perceive the comment to be racially motivated, she was so concerned about it that she reported it to the trial court. The appellant argued that the State's explanation for striking her was pretextual because it took a different stance regarding Ms. Hepting, a Caucasian. The trial court overruled the appellant's *Batson* objection, finding that the explanation given by the State was race-neutral and not pretextual.

At the conclusion of the State's evidence and at the conclusion of all of the evidence, the appellant's counsel filed motions for judgments of acquittal, which were denied. On September 25, 1996, the jury returned a verdict finding the appellant guilty of trafficking in the second degree and recommended that he be imprisoned for a period of ten years.

The appellant filed a motion for new trial, alleging that the trial court erred in overruling his *Batson* objection. On November 15, 1996, the trial court overruled the motion for new trial and sentenced the appellant to ten years imprisonment.

This appeal follows.

## Standard of Review

We review a trial court's denial of a motion for new trial for an abuse of discretion. *Wright v. Over–the–Road and City Transfer Drivers, Helpers, Dockmen and Warehousemen*, 945 S.W.2d 481, 489 (Mo. App.1997) (citation omitted). The Supreme Court of Missouri has described our review of a ruling for an abuse of discretion as follows: "Judicial discretion is abused when a trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration...." *King v. Copp Trucking, Inc.*, 853 S.W.2d 304, 307 (Mo.App. 1993) (citing *State ex rel. Webster v. Lehndorff Geneva*, 744 S.W.2d 801, 804 (Mo. banc 1988)). Rulings made within the trial court's discretion are presumed correct and the appellant has the burden of showing that the trial court abused its discretion. *Id.* "In order for the trial court to grant a motion for new trial, the error complained of as a basis for the motion must be prejudicial to the party seeking the new trial." *Wright*, 945 S.W.2d at 489–90.

We will not reverse a trial court's determination regarding a *Batson* challenge unless it is clearly erroneous. *State v. Brooks*, 960 S.W.2d 479, 488 (Mo. banc 1997); *State v. Roddy*, 963 S.W.2d 313, 317 (Mo. App.1997). "A finding is clearly erroneous when 'although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *State v. Hall*, 955 S.W.2d 198, 205 (Mo. banc 1997) (quoting *State v. Antwine*, 743 S.W.2d 51, 66 (Mo. banc 1987)). A trial court's findings as to a *Batson* challenge are "entitled to great deference because its decision depends largely on the evaluation of intangibles such as credibility and demeanor." *Roddy*, 963 S.W.2d at 317.

## I.

The appellant, an African–American, claims that the trial court erred in not granting him a new trial because one was warranted based on the trial court's failure to sustain his *Batson* objection to the State's use of a peremptory strike to strike venireperson Patricia Brown–Dixon, an African–American, in that it was racially motivated and the reason given by the State for the strike was pretextual. The State contends that its strike of Ms. Brown–Dixon was not motivated by the fact that she was an African–American and that its explanation for the strike was not pretextual. Instead, it contends, as it did at trial, that it struck her because of its concern that she would, in her deliberations, overcompensate in favor of the appellant, and that its concern was not based on her race, but on her stated perception that the venireperson's comment that the appellant was "guilty" was racially motivated, although from the comment there was no objective basis for concluding as such. And, further, it was not only concerned with the fact that she subjectively perceived the comment to be racially motivated, but felt it necessary to report the incident to the trial court. Thus, the issue for us to decide is whether the trial court's determination, that the State's reason for its strike was not racially motivated and pretextual, was clearly erroneous.

■ A *Batson* challenge invokes a three-step process. *Brooks*, 960 S.W.2d at 488.

> First, the defendant must raise a *Batson* challenge with regard to one or more specific venirepersons struck by the [S]tate and must identify the cognizable racial group to which the venireperson or persons belong. The [S]tate then must present reasonably specific and clear race-neutral explanations for the challenged strike. Assuming the prosecutor is able to articulate an acceptable reason for the strike, the defendant then needs to show that the [S]tate's proffered reasons for the strike were merely pretextual and that the strikes were racially motivated.

*Id.* (Citations omitted.) The State's proffered justification for the strike need only be "facially race-neutral." *Brooks*, 960 S.W.2d

at 488. The State's "explanation will be deemed race-neutral, even if it is not persuasive or even plausible," unless an inherent discriminatory intent can be inferred from the explanation given for the strike. *Id.* The State's perception of a "venireperson can be based on past experience, 'hunches,' or 'horse sense,' and still survive *Batson* if based on a racially-neutral factor." *Hall*, 955 S.W.2d at 205 (quoting *State v. Kempker*, 824 S.W.2d 909, 911 (Mo. banc 1992)). "A reason given by the [S]tate for striking a venireperson is not necessarily pre-textual simply because that reason by itself did not compel the prosecutor to strike any members of the panel." *Brooks*, 960 S.W.2d at 489.

■ Here, pursuant to the three-step *Batson* process, after the appellant objected to Ms. Brown–Dixon's being struck, the State proffered its race-neutral explanation for its strike, as stated, *supra.* A careful consideration of the explanation given by the State does not lead us to conclude that the trial court made a mistake in determining that the State's proffered reason for striking Ms. Brown–Dixon was not racially motivated or pretextual. This is so in that, for the reasons discussed, *infra*, we do not detect an inherent discriminatory intent in the State's striking of Ms. Brown–Dixon, which means that the State's past experience or "hunch" that a potential juror, who perceives a venireperson's comment to be racial in origin where there is no objective basis for doing so, is sufficient to survive a *Batson* objection. *Hall*, 955 S.W.2d at 205. However, even if we were to find an inherent discriminatory intent in the State's reason for striking Ms. Brown–Dixon, which would then require its reason given for the strike to be persuasive and plausible, we are satisfied that the reason given was race-neutral.

The appellant contends that a discriminatory intent should be inferred from the State's striking of Ms. Brown–Dixon given the fact that she is an African–American, as is the appellant; she perceived the comment of the venireperson, that the appellant was "guilty," to be racially motivated; and, she was concerned by the comment to the extent she deemed it necessary to report it to the trial court. The appellant specifically argues

that where the basis for a peremptory strike of a member of a racial minority has its genesis in a concern over what is perceived to be an issue of racial bias or prejudice, such as here, then *Batson* is violated. Such a blanket rule misses the mark of *Batson*.

*Batson* protects against a potential juror being struck based solely on his or her race. However, it does not insure that a juror will be allowed to deliberate based on race considerations, which is what the State was concerned would happen here, a concern which was not derived from the fact that Ms. Brown–Dixon was an African–American, but from the fact that she perceived the venireperson's comment in question to be racially motivated even though there was no objective basis for her perception. We find there was no clear objective basis for Ms. Brown–Dixon's perception that the comment in question was racially motivated in that, simply because the appellant is an African–American, would not objectively lead one to believe that the comment made by the venireperson was due to his race. It is just as likely that the venireperson's comment was motivated by factors concerning the appellant's appearance, other than his skin color, such as the length of his hair, the style of his clothing, his facial expressions or any number of other factors. Unless the fact that the venireperson who made the comment is white and the appellant is an African–American is deemed in and of itself to be sufficient for Ms. Brown–Dixon to conclude that the comment in question was racially motivated, there is no fact in the record that would conceivably lead a reasonable person to objectively conclude that the comment was racially motivated. Nonetheless, Ms. Brown–Dixon perceived the comment to be racially motivated and reported it and her perception to the trial court, prompting the State's concern and its strike of her.

From the record, it can reasonably be inferred that the State struck Ms. Brown–Dixon, not because she was an African–American, but because it feared she would not be a fair and impartial juror due to her demonstrated tendency to perceive race as an issue, where no reasonable objective basis existed for reaching such a conclusion. Based on her perception of the venireperson's comment as being racially motivated and her actions in reporting the comment to the trial court, the State's stated concern that she would project race into the case when deliberating, which would prevent her from being a fair and impartial juror, was a persuasive and plausible reason for its striking of her. Thus, we find that the trial court's determination that the State's reason for its strike was not racially motivated or pretextual was not clearly erroneous. *State v. Turner*, 921 S.W.2d 658, 664 (Mo.App. 1996).

The appellant also argues, in support of his contention that the State's reason for striking Ms. Brown–Dixon was racially motivated and pretextual, that, if the State was not concerned about the venireperson's comment's effect on Ms. Hepting so that it believed she could be a fair and impartial juror, it should not have been concerned about its effect on Ms. Brown–Dixon's ability to be a fair and impartial juror. In other words, the appellant is arguing that Ms. Brown–Dixon and Ms. Hepting were similarly situated venirepersons, other than the fact Ms. Hepting is white, and because the State struck Ms. Brown–Dixon, but did not strike Ms. Hepting, it can be inferred that Ms. Brown–Dixon's race must have been the motivating factor for the strike. We disagree with the appellant's argument in two respects.

 First, even if two venirepersons are similarly situated and one is stricken and the other is not, that fact, in and of itself, is not sufficient to render the State's explanation pretextual, even though it may be evidence of the same. *Brooks*, 960 S.W.2d at 489. Second, even if this was not the case, we find that Ms. Brown–Dixon and Ms. Hepting were not similarly situated as the appellant contends.

 Unlike Ms. Brown–Dixon, there is nothing in the record to suggest that Ms.

Hepting perceived the comment in question to be racial in nature or that her laughter at it was racially motivated. Further, unlike Ms. Brown–Dixon, Ms. Hepting was not so concerned by the comment that she felt it necessary to report it to the trial court. Thus, because Ms. Hepting did not share the perception or concern of Ms. Brown–Dixon as to the racial motivation of the venireperson's comment, they were not similarly situated; and, it was reasonable for the State not to have had the same concern about her ability to be a fair and impartial juror as it did about Ms. Brown–Dixon's. Thus, the fact that the State struck Ms. Brown–Dixon, but not Ms. Hepting, would not render the State's explanation for its strike pretextual.

For the reasons stated, we find that the trial court's determination, that the reason given by the State for striking Ms. Brown–Dixon was not racially motivated or pretextual, was not clearly erroneous.

Point denied.

## Conclusion

The judgment of the trial court denying the appellant's motion for a new trial is affirmed.

All concur.